United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| SAMUEL AHSAN,<br>   Plaintiff,<br><br>v.<br><br>HOMEBRIDGE FINANCIAL SERVICES, INC.,<br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>No. 18-40213-TSH |

**Memorandum of Decision and Order**
September 24, 2019

**HILLMAN, D.J.**

**Background**

Samuel Ahsan ("Ahsan" or "Plaintiff") filed suit against Homebridge Financial Services, Inc. ("Homebridge" or "Defendant") alleging claims for: rescission of a loan agreement based on mutual mistake (Count I); rescission of a loan agreement based on improper influence on appraiser (Count II); Lender Liability (Count III); and violation of the Massachusetts Consumer Protection Act, Mass.Gen.L. Ch. 93A ("Chapter 93A")(Count IV) .

This action involves a loan that Plaintiff obtained from Homebridge under a program overseen by the U.S. Department of Housing and Urban Development ("HUD") which allows borrowers to obtain financing for the purchase and rehabilitation of distressed property in a single loan. Such loans may be insured by the Federal Housing Administration ("FHA").  This

Memorandum of Decision and Order addresses Defendant's Motion To Dismiss (Docket No. 14). For the reasons set forth below, that motion is *granted.*

## Standard of Review

On a Rule 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). The standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernàndez v. Fortuño-Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

## **Facts**[1]

### Housing and Urban Development Insurance Requirements

Pursuant to Section 203(k) of the National Housing Act (the "Section 203 program"), the Secretary of HUD is authorized to insure mortgage loans to assist in the rehabilitation of single-family homes. 12 U.S.C. § 1709(k) (the "Act"). The Act permits "homeowners to finance both" the cost of the house and the improvements into one loan insured by the federal government. *See Id.*, at §1709 (k). HUD takes several steps to evaluate the value of the property prior to insuring the loan. *See* U.S. Department of Housing And Urban Development Handbook 4000.1 (2016), https://www.hud.gov/sites/ documents/40001HSGH.PDF ("HUD Handbook"), at 379. Those steps are summarized below:

> (1) the mortgagee must hire a consultant from the FHA 203(k) Consultant Roster to "inspect the property and prepare the Work Write-Up and Cost Estimate." The Work Write-Up explains each needed repair, and the work necessary to fix the same. The Cost Estimate details the expected cost of each repair. The total cost of repairs is then added to the cost of the property to determine the amount of the loan required.

> (2) the mortgagee must hire an appraiser from the "FHA Appraiser Roster" to determine projected rental income of the property. The appraiser determines the projected rental income by first creating an "estimate of fair market rent from all units." Then the appraiser subtracts from that rate "the greater of the Appraiser's estimate for vacancies and maintenance, or twenty-five percent of the fair market rent." The remaining amount is the projected rental income of the entire property.

> (3) HUD calculates the "Net Self-Sufficiency Rental Income" based on the reports of the consultant and the appraiser. The Net Self Sufficiency Rental Income

---

[1] In ruling on whether the complaint states an actionable claim, the court must consider only the complaint and documents annexed to it; the court cannot consider affidavits and miscellaneous documents proffered by parties, *unless* such other materials are fairly incorporated within the complaint or are susceptible to judicial notice. *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 12 (1st Cir. 2004). In this case, the parties have relied on facts supported by materials outside the record. Neither party disputes that such materials are not fairly incorporated in the complaint or susceptible to judicial notice. Accordingly, the Court has accepted factual assertions supported by such materials.

is the appraised rental income remaining after deducting the (1) principal payment on the loan, (2) interest on the loan, (3) taxes on the property, and (4) insurance ("PITI"). HUD requires that the PITI number be less than or equal to the monthly Net Self Sufficiency Rental Income. *Id.* Put another way, the PITI divided by the monthly Net Self-Sufficiency Rental Income (projected rental income minus PITI) must not exceed 100% to qualify for HUD insurance of the loan.

(4) Prior to the loan being approved, the borrower must sign the HUD-92700-A, 203(k) Borrower's Acknowledgment. The Borrower's Acknowledgment includes a provision that HUD "does not warrant the condition or the value of the property." The provision also states that the buyer is "responsible to have an independent consultant and/or professional home inspection service perform an inspection of the property and the cost of the inspection" can be added to the loan.

*See generally Id.*

## The Loan Application Process

Ahsan applied for a loan under the Section 203(k) program, to buy and renovate a property at 713 Franklin Street, Worcester Massachusetts (the "Property"). Homebridge is an approved mortgagee for the Section 203(k) program. Homebridge chose AM Renovation Consulting ("AM Renovation"), a HUD approved Section 203(k) consultant, to prepare the Work Write-Up and Cost Estimate for the Property to assure the remedy of any defects that would affect the health and safety of the occupants and the adequacy of structural, heating, plumbing, electrical and roofing systems. Based on the work-write-up and the cost to acquire the Property, Ahsan requested a loan of $274,932.

Applicable agency guidelines require that Homebridge adopt internal policies and procedures ensuring that its officers and agents avoid any conduct that would compromise the independence of the valuation process in connection with its underwriting of loans. Thus, Homebridge hired Class Appraisal Inc. ("Class Appraisal") to select an appraiser to evaluate the Property. Class Appraisal selected John Greenlaw ("Greenlaw") from Pioneer Appraisals. Because Homebridge's loan to Ahsan was to be insured under the Section 203(k) program,

4

applicable FHA guidelines required that monthly market rents for the property as established by independent appraisal, exceed the aggregate monthly principal, interest, taxes and insurance due under the terms of the loan. The loan would not properly qualify to be insured through the Section 203(k) program unless this guideline was met and, in turn, without the loan being insured under the Section 203(k) program, Homebridge would not have approved it.

Greenlaw used comparable properties in the vicinity of the Property to estimate its potential rental income value; he finished his initial report on February 13, 2018. According to an email sent by Homebridge employee Sean Callan ("Callan"), based on Greenlaw's appraisal, the loan would not qualify for HUD insurance. Consequently, Homebridge approved an extension to the loan commitment and rescheduled the closing in order to permit Greenlaw to reconsider his appraisal. Homebridge then sent Greenlaw seven additional property comparisons. Greenlaw determined that one of these properties was comparable (he disregarded the other property comparisons submitted by Homebridge for various reasons.) Greenlaw revised his appraisal and found that the gross rental value would be approximately $3,150 per month. After subtracting monthly PITI costs ($1,529), Greenlaw projected an operating income of $1,621, which satisfied HUD's self sufficiency requirement.

Homebridge approved Ahsan's Section 203(k) loan for $274,932. Ahsan executed the first 203(k) Borrower's Acknowledgement on January 29, 2018. He closed on the loan and executed a second 203(k) Borrower's Acknowledgment on March 2, 2018. The Borrower's Acknowledgements provided:

> **Condition of Property:** I understand that the property I am purchasing is not HUD approved and HUD does not warrant the condition or the value of the property. I understand the HUD plan review (where performed) and the appraisal are performed to determine compliance with the required architectural exhibits and to

estimate the value of the property, but neither guarantees the house is free of defects. I understand I was responsible to have an independent consultant and/or a professional home inspection service performs an inspection of the property and the cost of the inspection was (or could be) included in the mortgage.

Ahsan paid $11,034.78 down and tendered a promissory note to Homebridge for the loan balance secured by a mortgage on the Property.

Issues with the Property

On July 5, 2018, the City of Worcester ("City") condemned the Property after an inspection identified material structural defects. More specifically, the City condemned the Property after its building and plumbing inspectors found "structural issues with the framing" in the new bathroom, and the "ceiling and floor joist were cut and notch in excess of limitations." The two inspectors also found that the "main beams" in the basement were "rotting and falling away from any supports," more floor joist were "cut and notch in excess of their limitations," and "heating ducts were full of debris and dust." The amount of the loan Plaintiff obtained from Homebridge was insufficient to remedy the defects identified by the City's inspectors and render the property suitable for occupancy.[2]

The defects identified by the City inspectors increased the cost to rehabilitate the Property to an amount significantly greater than had been budgeted for in the loan based on AM Renovation's write up. Ahsan stopped making payments on the loan after it was condemned by

---

[2] The City inspectors identified serious defects when reviewing work completed by Plaintiff's contractors. It is not clear from Plaintiff's submissions that AM Renovation failed to identify and include these defects in its write up-- as opposed to the defects being the result of work done by Plaintiff's contractors. In any event, taking the facts in a light most favorable to Plaintiff, I have assumed for purposes of deciding Homebridge's motion to dismiss that AM Renovation failed to identify the serious defects identified by the City inspectors.

the City. Thereafter, he offered to transfer title to the Property to Homebridge in exchange for Homebridge completely forgiving the loan.

## Discussion

Ahsan seeks rescission of the loan based on mutual mistake and/or improper influence and monetary damages for lender liability and violation of Chapter 93A.  Homebridge has filed a motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) on the grounds that he has failed to state a claim for which relief may be granted.

### Whether Plaintiff has stated Claim for Rescission based on Mutual Mistake (Count I)

Ahsan asserts that the underwriting of Homebridge's loan was based upon the express assumption and understanding, shared by both parties, that the amount borrowed would be sufficient to render the Property habitable. He argues that the loan should be rescinded because both parties suffered from a mutual mistake of material fact by relying on consultant and appraiser values which were incorrect.  That is, the consultant and appraiser substantially undervalued how much it would cost to rehabilitate the Property and make it a habitable, viable rental property.

When parties enter a contract under a mutual mistake of material fact such that there was no "meeting of the minds," the contract was not properly formed, and a court may unwind it. *LaFleur v. C.C. Pierce Co.*, 398 Mass. 254, 258, 496 N.E.2d 827, 830 (1986). The mistake must be (1) shared by the parties, (2) relate to an essential element of the contract, and (3) be based on facts capable of ascertainment at the time the parties entered the contract. *Id*. A mistake about an expectation of future events is not necessarily a voidable mutual mistake. *See Cook v. Kelly*, 352 Mass. 628, 632, 227 N.E.2d 330, 333 (1967) (held no mutual mistake where plaintiff purchased

newspaper printing business which subsequently lost its publishing rights). "Importantly, a party bears the risk of a mistake when: (1) 'the risk is allocated to him by the agreement of the parties'; or (2) 'he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient.'" *AECOM Tech. Servs. Inc. v. Mallinckrodt LLC*, 117 F. Supp. 3d 98, 111 (D. Mass. 2015) (citation to quoted case omitted).

It is not enough to simply show that the parties shared the same misimpression. In order to undermine the integrity of the contract, "[t]he parties' mutual mistake of fact or law 'must be so substantial and fundamental as to defeat the object of the parties. A mutual mistake of material fact as to a basic assumption may result in rescission when the mistake upsets the very basis of the contract....' 'The sine qua non test is applied in cases of mutual mistake, that is, whether the contract would have been entered into had there been no mistake.'" *Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Massachusetts, Inc.,* 79 Mass. App. Ct. 300, 314, 945 N.E.2d 964, 975 (2011). Furthermore, "[w]hile it is clear that a party seeking rescission need not show even an innocent misrepresentation of some material assumption which forms the basis of his bargain in order to make out a case of mutual mistake of fact, it is also elementary that both parties must share the erroneous state of mind as to the basic assumption on which the contract was made. Avoidance is not permitted just because one party is disappointed in the hope that the facts accord with his wishes." *Covich v. Chambers*, 8 Mass. App. Ct. 740, 749–50, 397 N.E.2d 1115, 1121 (1979) (internal citations omitted). And, "[n]either party to a contract can rescind it 'because the known and assumed risk turned out to be greater than either or both expected it to

newspaper printing business which subsequently lost its publishing rights). "Importantly, a party bears the risk of a mistake when: (1) 'the risk is allocated to him by the agreement of the parties'; or (2) 'he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient.'" *AECOM Tech. Servs. Inc. v. Mallinckrodt LLC*, 117 F. Supp. 3d 98, 111 (D. Mass. 2015) (citation to quoted case omitted).

It is not enough to simply show that the parties shared the same misimpression. In order to undermine the integrity of the contract, "[t]he parties' mutual mistake of fact or law 'must be so substantial and fundamental as to defeat the object of the parties. A mutual mistake of material fact as to a basic assumption may result in rescission when the mistake upsets the very basis of the contract....' 'The sine qua non test is applied in cases of mutual mistake, that is, whether the contract would have been entered into had there been no mistake.'" *Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Massachusetts, Inc.,* 79 Mass. App. Ct. 300, 314, 945 N.E.2d 964, 975 (2011). Furthermore, "[w]hile it is clear that a party seeking rescission need not show even an innocent misrepresentation of some material assumption which forms the basis of his bargain in order to make out a case of mutual mistake of fact, it is also elementary that both parties must share the erroneous state of mind as to the basic assumption on which the contract was made. Avoidance is not permitted just because one party is disappointed in the hope that the facts accord with his wishes." *Covich v. Chambers*, 8 Mass. App. Ct. 740, 749–50, 397 N.E.2d 1115, 1121 (1979) (internal citations omitted). And, "[n]either party to a contract can rescind it 'because the known and assumed risk turned out to be greater than either or both expected it to

be.' *Id.*, at 751, 397 N.E.2d at 1122. "A party seeking rescission must show 'clear and convincing evidence' of a mutual mistake." *AECOM Tech. Servs. Inc.*, 117 F. Supp. 3d at 111.

In this case, Ahsan asserts that in entering the loan agreement both parties relied on the AM Renovation's estimate of what it would cost to rehabilitate the Property. However, as part of his loan documentation, Ahsan signed an acknowledgement that HUD, who was insuring the loan, did not "warrant the condition or the value of the property" and that he understood that the plan review and appraisals preformed were done "to estimate the value of the property, but neither guarantees the house is free of defects." Moreover, Ahsan acknowledged that he had the right to have "an independent consultant and/or a professional home inspection service perform an inspection of the property and the cost of the inspection was (or could be) included in the mortgage." Ahsan points out the acknowledgment was directed to HUD and not Homebridge. Nevertheless, it was part of the overall loan documentation and makes clear that AM Renovation's write up and Greenlaw's appraisals were for the purpose of *estimating* the potential value of the Property and cost of rehabilitation. Furthermore, as previously stated, Ahsan was expressly advised that he could hire his own consultant or inspector to review the Property; he chose not to do so. Under these circumstances, that the cost to rehabilitate the Property could turn out to be far greater than both Ahsan and Homebridge expected at the time that they signed the loan documentation was a known and assumed risk. Therefore, on the facts as alleged by the Plaintiff, there can be no mutual mistake and Plaintiff has failed to state a plausible claim for rescission in Count I.

<u>Whether Plaintiff has stated Claim for Rescission based on an Improper Appraisal (Count II)</u>

Ahsan asserts that Homebridge improperly interfered with and influenced the "independent" appraisal of the Property so that the appraiser, Greenlaw, would report projected cash flow, in the form of rental income, sufficient to satisfy the requirements to obtain a loan under the Section 203(k) program. Specifically, he claims: (1) "the bank wrongfully and improperly influenced its appraiser to increase the projected monthly market rent for the property so that it would meet the Federal Housing Administration's guidelines for §203(k) insurance," and (2) that "[t]he date for the scheduled closing of Homebridge's loan and Mr. Ahsan's acquisition of the property was rescheduled so that a revised appraisal could be issued reflecting the increased rental income which the bank improperly promoted in the interest of producing its loan." I agree with Homebridge that these conclusory allegations, without more, fail to allege a plausible claim for rescission. The parties have submitted matters outside the pleading which flesh out the substance of Plaintiff's claim. However, even considering these additional facts, for the reasons set forth below, I find that Plaintiff has failed to state a plausible claim. *Accord Lynch v. Federal National Mortgage Association*, CIVIL NO. 16-00213 DKW-KSC, 2017 WL 3908663 (D. Haw. Sept. 6, 2017) (claims lacked requisite factual pleading because they were results-oriented-- plaintiff made no showing how lender acted fraudulently or inappropriately, but merely stated because of value of mortgage, lender *must have* acted improperly).

The requirements governing the independence of appraiser is set forth in the Dodd-Frank Wall Street Reform Act ("Dodd-Frank Act") 15 U.S.C § 1639e (2019), which prohibits "any act or practice that violates appraisal independence." *Id*. at § 1639e (a). Relevant to this action, the Dodd-Frank Act explicitly prohibits a lender from "seeking to influence an appraiser or

otherwise to encourage a targeted value to facilitate the making or pricing of the transaction." *Id.* at § 1639e(b)(3). The general rule includes an express exclusion which allows a lender to ask the appraiser to: (1) consider additional, appropriate property information, including the consideration of additional comparable properties; (2) provide further detail, substantiation, or explanation for the appraiser's value conclusion; and (3) correct errors in the appraisal report. *Id.* at § 1639e(c).

After the initial appraisal was completed, Callan stated in an email that the appraisal was "too low to meet the FHA Self Sufficiency test," that is the loan could not be approved because it did not satisfy the HUD formula. In that same email, he recommended that the loan commitment be extended a week pending the appraiser's review of additional properties in the area and stated that "we have sent solid rental comps [to the appraiser] to get this adjusted but have not received the reports back just yet.". In revising the initial appraisal, Greenlaw considered one of the seven new properties suggested by Homebridge—he did not consider six of the properties suggested by Homebridge after finding them not comparable for rental or value purposes. After considering the one additional property he found comparable, Greenlaw concluded that, after completion of repairs, the gross rental value of the Property would be $3,150, and Plaintiff's monthly operating income from the Property would be $1,621, which met the HUD formula.

Initially, I find that Plaintiff has failed to state a plausible claim for the obvious reason that because he never completed the repairs and the Property has been deemed uninhabitable, it is impossible to determine the current fair market rental value of the Property. Consequently, Ahsan cannot allege, and likely cannot prove, that the rental income is not as projected in the appraisal—that is, he cannot prove that the appraiser, because of undue influence, inflated the

appraisal. Moreover, Homebridge's conduct falls squarely within the exception set forth in the Dodd-Frank Act which permits the lender to request that the appraiser "consider additional, appropriate property information, including the consideration of additional comparable properties." 15 U.S.C. 1639e (c)(1). Therefore, I find that Ahsan has failed to state a plausible claim for rescission in Count II based on Homebridge's alleged improperly influencing the appraiser.

<u>Whether Plaintiff has stated Claim for Lender Liability (Count III)</u>

Ahsan claims that Homebridge breached its fiduciary duty to him by improperly influencing the appraisal in order to secure the loan. In general, there is no fiduciary duty of care owed by a lender to a borrower. *See e.g. National Shawmut Bank v. Hallett,* 322 Mass. 596, 78 N.E.2d 624 (1948). Further, one party cannot unilaterally transform a relationship into a fiduciary relationship merely by putting absolute trust into the other party. *See Broomfield v. Kosow*, 349 Mass. 749, 212 N.E.2d 556 (1965); *see also Comstock v. Livingston*, 210 Mass. 581, 97 N.E. 106 (1912). Courts are hesitant to infer a fiduciary duty even when there is some indication of a trust relationship. *See Frappier v. Countrywide Home Loans,* 645 F.3d 51 (1st Cir. 2011) (held no fiduciary relationship between lender and borrower, where lender worked with the borrower for months, lender gave borrower his personal telephone number, and lender even said "sign this; I'll take care of it, and you'll be all set" at the closing). Moreover, courts have generally declined to find a fiduciary duty owed by the lender to the borrower in cases involving loans obtained through HUD under the Section 203(k) program. *See Diehl-Guerrero v. Hardy Boys Construction*, C.A. No. N16C-08-041 CLS, 2017 WL 886786 (Del. Super. Ct. Feb. 28, 2017) ("nature of the 203(k) program demonstrates that the 203(k) program requirements…are

for the protection of the lender." "it cannot logically be inferred that [lender] owed a duty to Plaintiff regarding selection of [appraiser]" and subsequently, the appraisal of the appraiser); *In Re Brown*, 319 B.R. 278 (2004). An exception to the general rule applies insofar "as a mortgagee *does* owe a fiduciary duty to a mortgagor to refrain from committing fraud." *HMC Assets LLC v. Conley,* No. 14-10321-MBB, 2016 WL 4443152 at *29 (D. Mass. Aug. 22, 2016) (emphasis added).

In this case, Ahsan has not alleged any facts which support a finding of "a special trust and reliance" between the parties or other extraordinary circumstances which would change the non-fiduciary nature of their relationship. Accordingly, I find that Ahsan has failed to state a plausible claim in Count III for lender liability against Homebridge.

<u>Whether Plaintiff has stated a claim for violation of Chapter 93A (Count IV)</u>

Ahsan alleges in the Complaint that he sent a Chapter 93A demand letter to Homebridge. However, Homebridge asserts that Ahsan failed to allege in his Complaint that he served it with a demand letter that satisfies Chapter 93A's requirements. For the reasons set forth below, I find that Ahsan has failed to allege any facts which would support a finding that Homebridge violated Chapter 93A. It is therefore not necessary for me to address whether Ahsan needs and/or has failed to plead *with particularity* such that he has complied with Chapter 93A's demand letter prerequisite.

Ahsan asserts that Homebridge engaged in unfair and deceptive acts and practices by interfering in the independent appraisal procedure for the Property. However, as I found above, Ahsan has failed to assert facts which would establish that Homebridge engaged in any improper

13

conduct during the appraisal process. Therefore, he has failed to state a plausible claim against Homebridge in Count IV for violation of Chapter 93A.

## Conclusion

Defendant's Motion To Dismiss (Docket No. 14) is ***granted***.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE